CALDWELL *v.* FITZHUGH.

Opinion delivered December 12, 1927.

1. FERRIES—FRANCHISE TO OPERATE FERRY BETWEEN COUNTIES.—In order to obtain a license or franchise to operate a ferry across a river which is the boundary between two counties, under Crawford & Moses' Dig., § 4697, the applicant must get permission from the county court in each county.

2. FERRIES—JURISDICTION TO GRANT FRANCHISE.—Where a river is the boundary between two counties, the granting of a ferry franchise is not wholly within the jurisdiction of either county.

3. FERRIES—EFFECT OF DENIAL OF FRANCHISE BY ONE COUNTY.—Where a river is the boundary between two counties, and the county court of one of such counties decides against the granting of ferry privileges, such decision becomes *res judicata,* and petitioner's application for a ferry franchise cannot be heard by the county court on the opposite side of the river.

Appeal from Independence Circuit Court; *S. M. Bone,* Judge; affirmed.

*S. M. Casey,* for appellant.

*W. K. Ruddell* and *Coleman & Reeder,* for appellee.

MEHAFFY, J. The appellant states that the sole question presented by this appeal is whether or not the action of one county in refusing to grant a ferry franchise is conclusive or *res judicata* on the other county adjoining to grant a ferry franchise at the same point, where the river is the boundary line between the two counties.

The appellee states that the sole question presented by this appeal is the question of *res judicata*.

The appellant owns land on the Jackson County side of the river, and has control from C. P. Vaughan, the owner of the land on the Independence side of the river. Appellant filed a petition in the Jackson County Court asking the court to grant him a ferry franchise to operate a ferry at a point on Black River. Black River is the boundary between Jackson and Independence counties, at the point where appellant asked for the franchise. The county court of Jackson County decided against him, and he appealed to the circuit court, where the case was again decided against him. No appeal was ever taken from the finding and judgment of the circuit court.

On January 3, 1927, appellant filed his petition in the Independence County Court for a franchise to operate a ferry at the same point on Black River that was described in his petition theretofore filed in the Jackson County Court. The Independence County Court found in his favor. An appeal was taken to the Independence Circuit Court, which court found against him on the ground that the judgment of the Jackson Circuit Court was a bar to his right to prosecute this suit.

The only question therefore for the consideration of this court is whether the judgment of the Jackson Circuit Court was a bar to this suit.

We deem it unnecessary to either set out or discuss the provisions of the law with reference to the right of the county courts to grant a license or franchise, except that section which regulates the practice where the river is the boundary between two counties. That is § 4697 of Crawford & Moses' Digest, and reads as follows:

"If any navigable stream or lake shall form a portion of the boundary of any county so that one bank shall be in one county and the other in a different county, at the place where it is proposed to erect a ferry, then a license shall be had from the county court for the ferry on the respective banks or shores."

It will be observed from the reading of the above section that, in order to get a license or franchise to operate a ferry across a river that is the boundary between two counties, the applicant must get permission from the county court in each county.

The authorities are not in entire harmony, some holding that, when the opposite sides of the river are within the jurisdiction of different boards, there is usually a concurrent jurisdiction delegated to them of the matter of ferries. Of course, if the courts had concurrent jurisdiction, the judgment of one court would bar any right of the party to have the matter determined by the other court. If the courts had concurrent jurisdiction, the applicant for ferry privileges would have the right to apply to either. But, when he had done that, when he had selected the forum, a decision of that court would be binding on him—would be *res judicata.*

This court said, in a recent case in discussing article 7, § 28, of the Constitution:

"This undoubtedly includes the regulation of ferry rates, because it is a part of the control of ferries. It was the plain purpose of the framers of the Constitution to place within the jurisdiction of the county court all control and regulation of ferries. The jurisdiction was exercised by the county court without objection in the case of *Covington* v. *St. Francis County,* 77 Ark. 258, 91 S. W. 186; *Ark. Railroad Commission* v. *Bovay,* 174 Ark. 1057, 298 S. W. 331.

This court also said, in speaking of the jurisdiction of county courts where the river was the boundary line, in the case of *Fulton Ferry & Bridge Co.* v. *Blackwood,* 173 Ark. 645, 293 S. W. 2, decided April 11, 1927:

"In making the orders granting appellant the franchise heretofore mentioned, they each provided that said bridge should be located at the point where the improved road from Texarkana to Hope now crosses the river at the town of Fulton."

The court also said in the above case:

"It is left entirely optional with the county courts of the two counties whether or not the control of the bridge shall be taken over, and this provision leaves unimpaired the jurisdiction of the county court of the bridge when it has seen fit to exercise this jurisdiction. This conclusion leaves out of consideration the fact that the bridge is to span a navigable river which is the boundary between two counties, and that it is not and cannot be wholly within the jurisdiction of the county court of either county."

It will be seen therefore that this court has held that, where the river is the boundary between two counties, the bridge could not be wholly within the jurisdiction of either county. The same is true with reference to ferry privileges. The privileges on one side of the river in this case are under the jurisdiction of the county court of Jackson County and on the other side of the river in Independence County.

The Alabama court stated, as said by appellant:

"As the State is intersected by numerous rivers, most of which constitute the boundaries of counties, it is very improbable that the difficulty supposed to exist in this case was not foreseen. In a case where either of two counties would have an equal right to establish a ferry, the right is given to both, and when the power is exercised by either it is exhausted. It is in the nature of concurrent jurisdiction, the proper exercise of which by one tribunal necessarily ousts all others." *Jones* v. *Johnston*, 2 Ala. 746.

The Alabama court in another case said:

"It is contended by counsel for the plaintiffs in error, the river being the dividing line between the two counties of Shelby and Talladega, each county has a right

to establish a ferry on its side; and that in such a case, the prohibition that no ferry shall be established within two miles, by water, of another, does not apply. We cannot yield to the force of this reasoning. The licensing and use of a ferry necessarily require the use of both banks of the river; and, if one is established on one side, it excludes the idea of the legitimate establishment of another on the opposite side, or within two miles, by water, on either side." 3 Porter's Reports, 412.

It therefore appears that, whether the courts have concurrent jurisdiction as held by the Alabama court or whether the jurisdiction is confined to the county in which the court is held, in either event, the judgment of the Jackson County Court would be a bar. If the courts had concurrent jurisdiction, appellant's right would be barred for the reasons given by the Alabama court. And, in order to be *res judicata*, it is only necessary that a court of competent jurisdiction has decided the question. It is immaterial whether it decided it right or wrong. If the decision was wrong, it could be corrected by appeal, and in no other way. But, if it had jurisdiction to try the case, that necessarily means that it had the power to decide it either way, and whatever decision was reached by the court was binding.

Under our statute, which we have quoted above, it appears that one desiring ferry privileges, where the river divides two counties, must apply to each county, and, that being true, neither county court would have jurisdiction except to the center of the stream. But, since it would be impossible to operate a ferry from one bank of the river to the other unless a franchise was granted by both counties, when one county has passed on the question and refused to grant the license, it would be useless for the other county to grant it, because the ferry could not be operated, and the decision of the county court, then, on either side of the river, would be as effective in barring further proceedings as if the courts had concurrent jurisdiction.

The appellant in this case owned the land on the Jackson County side of the river. He applied to the Jackson County Court, and that court decided against him. On appeal to the circuit court, the circuit court of Jackson County decided against him, and appellant, having selected the forum, the county court of the county in which his land was situated, a decision of that court settles the question and disentitles the appellant to apply to the court in the other county, where, if a franchise was granted him, it would be perfectly useless.

The judgment of the circuit court is therefore affirmed.