**WHITE et al. v. MAVERICK COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. 1.**

No. 1214—5669.

Commission of Appeals of Texas, Section B.

Feb. 4, 1931.

108

Black & Graves, of Austin, Jones & Lyles and John J. Foster, all of Del Rio, and J. B. Lewright, of San Antonio, for plaintiffs in error.

Ben V. King, of Eagle Pass, and Terrell, Davis, McMillan & Hall and E. W. Clemens, all of San Antonio, for defendant in error.

LEDDY, J.

This case is one in which plaintiffs in error sought to enjoin certain condemnation proceedings commenced by the defendant in error, and its board of commissioners of appraisement, and the taking possession of their lands thereunder, it being alleged that the proceedings by which such lands were sought to be condemned were void because the statute (section 14, Chap. 280, Laws of the 41st Leg., p. 578 [Vernon's Ann. Civ. St. art. 7880—132]) by which they were authorized was unconstitutional. The injunction prayed for was denied by the district court. An appeal was duly prosecuted to the Court of Civil Appeals, which affirmed the judgment of the trial court. 26 S.W.(2d) 659.

It was held by the Court of Civil Appeals that the district court was without jurisdiction to grant the injunction prayed for; that plaintiffs in error's sole remedy was to prosecute the appeal authorized by the statute assailed by them as void. For the reason given, that court declined to pass on the question as to whether the statute was unconstitutional.

Section 14 of said act, which prescribes the method of condemning land by irrigation districts, is challenged as being unconstitutional upon numerous grounds. As we have reached the conclusion that the provision for condemnation of lands contained in the section assailed is violative of article 2, section 1, of the Constitution of this state, which prohibits the conferring of judicial power upon executive officers of the government, it is unnecessary that we enter into a discussion of the remaining constitutional objections urged to this portion of the act.

Section 14 of said act contains elaborate provision for the condemnation of land and the assessment of benefits. Briefly stated, the procedure outlined for irrigation districts operating under said act is substantially as follows:

The board of directors of the district, each of whom are required to own lands therein, are directed to appoint a "board of commissioners of appraisement." This board is directed to organize by electing a chairman, vice chairman, and secretary. When land is sought to be condemned by the district, it is provided that such board view the land, and, after an investigation, that it make and file with the board of directors of the district a written report, setting forth the value of the land to be taken by the district in fee simple; the amount of the assessed compensation on any easement taken by the district. Upon this report being filed with the board of directors, the landowner is duly notified and the matter is set down for hearing, at which time he is permitted to offer such evidence as he may see fit to present, and, after a full hearing, the board may change or modify its decree. If the landowner does not respond to the notice, the decree rendered by the board of commissioners becomes final, and, without being entered as the judgment of the county court, operates to divest the owner of title to land sought to be condemned, and vests the same in the irrigation district.

If either party is dissatisfied with the award made after a hearing, an appeal is provided to the county court, and referees are appointed by that court who make a report without hearing any evidence, except they may call to their assistance the district's engineer. If exceptions are filed to the report of the referees by the landowner after he is given notice of the report, the matter is tried in the county court without a jury.

It is also provided that no appeal from the award of the board of appraisers shall prevent the condemnor from taking possession of the land involved if compliance with the provisions of the act for payment of compensation is made.

Unlike the general condemnation statute, the report of the board of commissioners of

appraisement, in the absence of objection thereto, is not entered as the judgment of the county court. Under the provisions of the act the decree of the commissioners of appraisement of itself operates to divest the landowner of title to his property, and vests the same in the condemnor. That strictly judicial power is conferred upon this board is too plain to admit of any serious controversy. It is not an instance where the Legislature has sought by statute to vest executive officers with powers of a quasi judicial nature involving the exercise of judgment and discretion as a necessary incident to the discharge of their necessary functions, but is one where strictly judicial power is attempted to be given, enabling the persons upon whom it is conferred by solemn decree to divest a citizen of title to his property. It is frankly conceded by defendants in error that the conferring of such power can only be justified upon the theory that the Legislature intended by this enactment to create the board of commissioners of appraisement as a court, and contemplated that it function as such.

A careful review of the provisions of the act leads us to the conclusion that the Legislature in providing for this board of commissioners of appraisement contemplated the creation of an administrative board rather than that of a court. One of the best methods to ascertain the legislative intent in this respect is to determine whether the system under which the board of appraisement is to function is similar in nature to that usually provided when the Legislature creates a court.

The procedure provided for the board of commissioners of appraisement is radically different from that contained in any act by which the Legislature has created a court within the history of our state. This board of appraisers is vested with jurisdiction limited to the class of cases specified in the act. The Legislature clothed one of the litigants in this particular class of cases with the power to appoint the members of the board. That the board of directors of the district, each of whom must be a landowner therein, and therefore directly and financially interested in the result of condemnation proceedings in its behalf, is given the power to name the judges who shall adjudicate the rights of the parties, is contrary to the fundamental and basic principle that courts are and should be created as fair and impartial tribunals.

Again, all enactments heretofore made by the Legislature in creating courts allow parties having litigation therein the right of an original hearing before a decision is rendered, while, under the provisions of this law, the so-called court is required to make its own investigation in any manner it may see fit and reach a decision as to the amount of compensation which should be awarded the owner of land sought to be condemned. It may obtain the information upon which it acts from any biased or prejudiced source it deems proper. The landowner is not accorded a hearing until after the board has reached a conclusion and filed its decree. After the question in which the landowner is vitally interested is decided, the owner is given notice thereof, and the matter is set down for hearing. He is then permitted to file objections or exceptions to the decree and may offer such evidence as he cares to present, not for the purpose of enabling the board to reach a fair and just conclusion on the issue before it, but is given an opportunity to attempt to get the board of commissioners to change its mind and modify or change the decree accordingly. The landowner is assigned the Herculean task of presenting sufficient evidence to convince the body before whom he appears that its decision, based upon its own independent investigation, the nature of which is wholly unknown to him, is wrong and should be changed or modified. In other words, he is merely given the poor privilege of urging a motion for new trial, without the benefit of knowing the facts inducing the rendition of the judgment which he assails.

If the Legislature intended to create a court by the provisions of section 14, with jurisdiction to condemn land and award compensation to the owners, it is the only instance within our judicial history where the litigants before the court were not entitled to a fair and impartial hearing with the right to introduce evidence before the court should reach its conclusion as to the respective rights of the litigants before it.

The fact that section 14 contravenes the provisions of the Constitution of this state in the respect complained of does not mean that the entire act is invalid. Our courts uniformly hold that, if the manifest purpose can be carried into effect by upholding the act and destroying its provisions contrary to the Constitution, the same should be upheld. Lytle v. Halff, 75 Tex. 138, 12 S. W. 610; Zwernemann v. Von Rosenberg, 76 Tex. 527, 13 S. W. 485; State ex rel. Audrain County v. Hackmann, 275 Mo. 534, 205 S. W. 12; Alexander v. Stuckey, 159 Ark. 692, 253 S. W. 9.

A well-recognized test to determine whether a statute is or is not severable, so that a portion may be rejected, is that it ought not to be held void in its entirety unless the invalid portion is so important to the general plan and operation of the law as to reasonably lead to the conclusion that it would not have been enacted if the Legislature had presumed the invalidity of the part held to be unconstitutional. Ex parte Towles, 48 Tex. 413; Myers v. State, 47 Tex. Civ. App. 336, 105 S. W. 48; 6 R. C. L., § 123.

Another well-accepted canon of construc-

tion by which to ascertain the legislative intent as to whether it would have enacted the valid portion of the act is to consider if the elimination of the unconstitutional portion will leave a consistent and workable act calculated to obtain the result intended by its passage. Chambers v. Baldwin (Tex. Civ. App.) 274 S. W. 1011; Roberts v. Atlantic Oil Producing Co. (C. C. A.) 295 F. 16; Greeley Transportation Co. v. People, 79 Colo. 307, 245 P. 720; Checker Taxi Co. v. Collins, 320 Ill. 605, 151 N. E. 675, 676.

■ Considering this question under the foregoing well-established rules, we conclude that the provisions of the act clearly indicate that the Legislature would have enacted the remaining portion of this law had it considered the provisions it made for condemnation proceedings unconstitutional. This becomes apparent from that portion of the act which gives the board of directors of the district the option of condemning land in behalf of the district under section 14 thereof or of using the procedure outlined in the general condemnation statute. There is also a clause in the act making applicable the provisions of title 52—the general condemnation statute—in all instances not specifically covered by the act. If, therefore, the Legislature had omitted entirely the provisions of section 14 in regard to condemnation of land, the act would nevertheless have been a complete and workable one, as all the provisions of the general condemnation statute, which has been in use for a long period of years, would have been available and furnished any irrigation district operating thereunder a complete and workable plan by which any land necessary for its uses could be condemned by compliance with its terms.

■ The vice in this statute is not cured because of the fact that the board of commissioners of appraisement's original award is only final when no appeal is taken to the county court. This same contention was urged in the case of Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S. W. 301, 305. It was denied by our Supreme Court, Justice Greenwood, speaking for the Court, saying: "It is earnestly argued that the statutes are saved from constitutional infirmity because the action of the Board is final only as to those who desire it to be final, for it is said any dissatisfied claimant is entitled to a court trial de novo. The Constitution, in its prohibition against conferring on persons in one governmental department power belonging to another, contains no exception of instances wherein the latter department may review the acts of the former. The Constitution making no such exception, the courts should not make it."

■ Finally, it is urged by the defendant in error that, even if the portion of section 14 complained of be unconstitutional, the Court of Civil Appeals was correct in its holding that the district court was without jurisdiction to enjoin the taking of plaintiffs in error's land under the condemnation proceedings, as it was their duty to prosecute the appeal allowed under the very statute which they assail as being unconstitutional.

We think the conclusion reached by the honorable Court of Civil Appeals would be a correct one if this were a suit to review condemnation proceedings because of some irregularity therein. It is not, however, that character of proceeding. It is one in which it is shown that land belonging to plaintiffs in error is about to be taken under proceedings which are wholly void. Under such circumstances, the district court is clothed with jurisdiction to enjoin the threatened trespass. If the condemnation statute, under which the right to take possession of plaintiffs in error's land is claimed, be unconstitutional and void, it is not necessary for plaintiffs in error to prosecute the appeal authorized by such statute. Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S. W. 301; Gulf Coast Irrigation Co. v. Gary, 118 Tex. 469, 14 S.W.(2d) 266.

The decree filed by a board created under an unconstitutional law can certainly be given no more sanctity than the void judgment of a lawful court. It is uniformly held that a person is not compelled to appeal from a judgment where the same is void for lack of jurisdiction in the court rendering same. Under such circumstances, it is well settled that the injured party may invoke the power of the district court to enjoin trespasses upon his property attempted under such a judgment. Walker v. McMaster, 48 Tex. 213; Dunlap v. Southerlin, 63 Tex. 38; Freeman v. Hawkins, 77 Tex. 498, 14 S. W. 364, 19 Am. St. Rep. 769; Williams v. Warren, 82 Tex. 322, 18 S. W. 560.

We therefore conclude that that portion of section 14 which prescribes the method for condemning land is void because in contravention of the provisions of article 2, section 1, of the Constitution of this state in the respect herein pointed out, but that such invalidity does not destroy the remainder of the act.

We therefore recommend the judgments of the district court and Court of Civil Appeals be reversed, and that judgment be here rendered in favor of plaintiffs in error.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and judgment here rendered for the plaintiffs in error, as recommended by the Commission of Appeals.